UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CLIFTON LLOYD,

        Plaintiff,

        v.                                            Case No. 20-C-1653

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

Plaintiff Clifton Lloyd filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability, disability insurance, and supplemental security income under Titles II and XVI of the Social Security Act. Lloyd contends that the decision of the administrative law judge (ALJ) is flawed and requires remand for several reasons. For the reasons that follow, the decision of the Commissioner will be reversed and remanded for further proceedings.

## BACKGROUND

On July 30, 2018, Lloyd filed applications for disability and disability insurance benefits and supplemental security income under the Social Security Act, alleging disability beginning January 28, 2015, when he was 37 years old. R. 21, 202, 209. He listed his lower back and seizures as the conditions limiting his ability to work. R. 238. After his claims were denied initially and upon reconsideration, he requested a hearing before an ALJ. R. 21. On July 30, 2019, ALJ Peter Kafkas held a hearing at which Lloyd, who was represented by counsel, and a vocational expert (VE) testified. R. 37–63.

Lloyd testified that he lived with his girlfriend and their one-year-old son, who has special needs. R. 45. He had past relevant work as a mover, mover driver, and stock clerk. R. 57. Lloyd testified that he has at least five to six seizures a week, sometimes while sleeping. R. 49. He stated that he has gone to the hospital for his seizures, including "probably three or four times" within the previous six months. *Id.* Lloyd explained that he has two kinds of seizures: staring seizures and those involving shaking. R. 51. He stated that, before having a seizure, his "hands get really clammy" and he starts to feel dizzy. *Id.* During his shaking seizures, he sometimes loses bladder control or bites his tongue. *Id.* He estimated that he had shaking seizures once or twice a month and staring seizures five to six times per week. *Id.*

Lloyd testified that, while he could grasp things with his hands, he could not do chores around the house such as laundry, vacuuming, cleaning, and dishes because he cannot stand for too long. R. 48. He indicated that he could not lift his child above his head. R. 47. He stated that he sometimes helps with cooking but that his girlfriend helps him with work on the stove because she is concerned he will have a seizure and burn the house down. R. 54. Although he has a driver's license, he had not driven in the last six months, and when he drove previously, it was to take his older children to school or go to the gas station. R. 49–50. He testified that he lies down for an hour to an hour-and-a-half each day because his medication makes him groggy. R. 54.

In a twelve-page decision dated April 28, 2020, the ALJ concluded that Lloyd was not disabled within the meaning of the Social Security Act from January 28, 2015, through the date of the decision. R. 21–32. In reaching his decision, the ALJ followed the five-step sequential evaluation process established by the Social Security Administration (SSA) for determining disability. The ALJ determined that Lloyd met the insured status requirements of the Social Security Act through December 31, 2019, but had not engaged in substantial gainful activity since January 28, 2015, the alleged onset date. R. 23. The ALJ found that Lloyd had the following severe

impairments: lumbar spine impairment and epilepsy. *Id.* But the ALJ concluded that Lloyd did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24. He then assessed Lloyd's residual functional capacity (RFC), finding that he could perform light work "except no climbing of ladders, ropes or scaffolds and occasional stooping. The claimant must avoid use of dangerous moving machinery and exposure to unprotected heights." R. 24–25.

The ALJ found that Lloyd was unable to engage in any past relevant work but that, considering his age, education, work experience, and RFC, there were a number of jobs in the national economy that Lloyd could perform, including marker, garment sorter, and mail clerk. R. 31–32. Based on this finding, the ALJ concluded that Lloyd had not been disabled from January 28, 2015, through the date of the decision. R. 32. The Appeals Council denied Lloyd's request to review the ALJ's decision, making that decision the final decision of the Commissioner of Social Security in his case. R. 8.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d

3

863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Lloyd argues, among other things, that the ALJ's evaluation of his seizures at step three of the sequential evaluation process is conclusory and not supported by substantial evidence. At step three, the ALJ must determine whether the plaintiff's impairments or combination of impairments meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citation omitted).

Listing 11.02 describes epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C) or

4

B. Dyscognitive seizures (11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C) or

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
   1. Physical functioning (see 11.00G3a); or
   2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
   3. Interacting with others (see 11.00G3b(ii)); or
   4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
   5. Adapting or managing oneself (see 11.00G3b(iv))
or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
   1. Physical functioning (see 11.00G3a); or
   2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
   3. Interacting with others (see 11.00G3b(ii)); or
   4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
   5. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.02. As relevant here, "generalized tonic-clonic seizures" are characterized by "loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions)." *See* Listing 11.00H1a.

The ALJ's listing discussion is brief. He noted that Lloyd's counsel argued that his epilepsy meets Listing 11.02(A) but found that "treatment records do not show that the seizures occurred at the requisite frequency" and "the condition does not meet the listing as the medical evidence of record does not show" the requirements for A, B, C, or D. R. 24. Lloyd's counsel not only asserted that he met Listing 11.02(A) but also that he met Listing 11.02(C). In her pre-hearing brief, counsel argued that, even if Lloyd's seizures are found to not occur at least monthly, Lloyd met Listing 11.02(C) because he had tonic-clonic seizures every two months and has associated "marked" limitations in both physical functioning and maintaining concentration, persistence, or pace. R. 321.

The ALJ dismissed the possibility that Lloyd met the Listing by merely quoting the requirements of the Listing and stating, without any further analysis, that Lloyd did not meet the requirements. The ALJ's analysis of the Listing was perfunctory.

The Commissioner argues that, when the ALJ's decision is read as a whole, there is clear support for the ALJ's listing decision. She asserts that the ALJ's discussion of the medical evidence supports the ALJ's conclusion that Lloyd's seizures were not so severe as to be presumptively disabling. But the Commissioner does not explain how the medical evidence cited constitutes a part of the ALJ's listing analysis. The ALJ's summary of the medical evidence does not refer to or analyze Listing 11.02. The Commissioner also contends that the medical opinion evidence provides support for the ALJ's conclusion. There is nothing in the record to suggest that the ALJ relied on the state agency physician opinions to support his step three findings, however. The ALJ only discussed the opinions of the state agency consultants in determining Lloyd's RFC.

The ALJ's Listing discussion is deficient because it does not contain an explanation or proper analysis that enables this Court to trace the path of the ALJ's reasoning. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."); *Minnick*, 775 F.3d 935–36 ("This is the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing."). The ALJ's failure to build a logical bridge from the evidence to his conclusion warrants remand in this case.

## CONCLUSION

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently evaluate Lloyd's seizures at step three of the sequential

evaluation process, the Commissioner should also address Lloyd's other claims of error on remand, including that the ALJ's conclusion that Lloyd's statements are not entirely consistent with the record is not supported by substantial evidence, that the ALJ erred in implicitly concluding that Lloyd would never have a seizure at work, and that the ALJ erred in his evaluation of Dr. Morris' opinions. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 25th day of March, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge